[742 NYS2d 161]

In the Matter of Roger A. Fortune et al., Appellants, v State of New York, Division of State Police, et al., Respondents.

Third Department, May 9, 2002

**APPEARANCES OF COUNSEL**

*Gleason, Dunn, Walsh & O'Shea*, Albany (*Mark T. Walsh* of counsel), for appellants.

*Eliot Spitzer, Attorney General*, Albany (*Robert M. Goldfarb* of counsel), for respondents.

**OPINION OF THE COURT**

SPAIN, J.

On August 21, 1996 petitioners, State Troopers assigned to a station in Nassau County, were working an early morning tour of duty together in a marked police vehicle. At about 3:00 A.M., they responded to a report that someone was firing a gun in the parking lot of a nearby nightclub. Several people at the scene reported to them that the shooter and another person had entered a late model white Chevrolet Tahoe. When petitioners attempted to stop the vehicle, it sped away and petitioners, joined by other state and local police units, gave chase. Leading the pursuit, petitioners observed the Tahoe proceed along the wrong side of a highway, slow down and make a U-turn at an exit ramp leading to a highway known as the Belt Parkway. As the vehicle turned, they heard multiple shots and saw what appeared to be muzzle flashes emanating from the passenger side of the Tahoe which they believed were aimed in their direction. Petitioners turned and followed the vehicle and, while proceeding westerly along the Belt Parkway, each petitioner fired one or two rounds at the Tahoe. Petitioner Roger A. Fortune told petitioner Christopher M. Wetz to cease firing when he saw the headlights of a vehicle approaching in

the oncoming lane. Petitioners continued the pursuit until their patrol vehicle began to experience mechanical difficulty, causing them to fall back and to lose sight of the Tahoe. By the time they caught up to the Tahoe, it had crashed and its occupants were being removed from the vehicle by other police officers.

Thereafter, respondent Division of State Police undertook an investigation into, inter alia, the circumstances in which petitioners discharged their firearms and, specifically, the appropriateness of the use of deadly physical force/discharge of firearms by petitioners and other officers who had participated in the apprehension of the occupants of the Tahoe. During the course of the inquiry, petitioners were separately interviewed in the presence of their attorney and a union representative. At the conclusion of the investigation, State Police Captain Michael Williams issued a detailed report concluding that petitioners had properly discharged their firearms in compliance with state laws and applicable regulations. Upon reviewing the report, First Deputy Superintendent Wayne Bennett disagreed and issued letters of censure to petitioners reasoning, inter alia, that petitioners' shooting at the Tahoe "endangered the public and fellow officers" and was contrary to State Police procedures. In May 1998, petitioners commenced a CPLR article 78 proceeding to challenge the issuance of the letters of censure.[1] In June 2000, while that matter was pending, the letters of censure were withdrawn and, on the same date, respondent Superintendent of State Police issued identical superceding letters of censure to petitioners.

Petitioners thereafter commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment challenging the Superintendent's issuance of the letters of censure without a hearing as arbitrary, capricious and an abuse of discretion. Petitioners also sought a declaration that State Police regulations, insofar as they permit the imposition of the sanction of censure without a hearing or other due process procedures, violate Civil Service Law § 75 and NY Constitution, article I, § 6, as well as the 14th Amendment of the

---

1. Notably, in January 1999, Supreme Court (Ceresia, Jr., J.) dismissed that portion of petitioners' cause of action seeking to require respondents to follow the sanction and hearing requirements of Civil Service Law § 75, reasoning that the collective bargaining agreement between the Police Benevolent Association of the New York State Troopers and the Division of State Police allowed management to impose discipline according to the rules and regulations of the State Police and was binding on petitioners. Petitioners did not appeal.

US Constitution. Supreme Court dismissed the petition/complaint on the merits reasoning that the Superintendent's decision was supported by a rational basis and that petitioners were not denied due process, as they were allowed to refute the allegations by submitting response letters to be placed in their files. The court also noted that petitioners had conceded that their Civil Service Law § 75 argument was barred by collateral estoppel.[2] Petitioners appeal and we affirm.

■ " '[I]n a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the [determination] or whether it is arbitrary and capricious' " (*Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d 549, 550, *lv denied* 96 NY2d 701, quoting *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363; *see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 231). Moreover, an administrative determination regarding discipline will be afforded heightened deference where a law enforcement agency such as the State Police is concerned (*see, Matter of Santos v Chesworth*, 133 AD2d 1001, 1003; *Matter of Kenny v Connelie*, 88 AD2d 682; *Matter of Leake v Connelie*, 75 AD2d 912, 913; *see also, Matter of Sauer v Connelie*, 71 AD2d 770, 771, *affd* 50 NY2d 858). On the record before us, we conclude that the Superintendent's determination to censure petitioners was rationally based and not arbitrary and capricious.

Although it is clear that the State Police Administrative Manual allows police officers to use deadly force when they are being fired upon, it also states that officers must "do [their] utmost to protect human life and avoid using firearms unless it is absolutely necessary" (New York State Police Administrative Manual, art 16B). In response to the Superintendent's letters of censure raising concern for any innocent passenger who may have been inside the fleeing vehicle, petitioners contend that they knew that only two people were in the Tahoe and that both had been shooting at them. The record before us supports the conclusion that petitioners had no way of knowing if any innocent victims were in that vehicle, as their assessment of its occupants was based on rushed eyewitness accounts and

---

2. We decline to address petitioners' Civil Service Law § 75 argument inasmuch as petitioners do not dispute that they conceded, before Supreme Court, that the argument is barred by the doctrine of collateral estoppel. Accordingly, the issue is not properly before us on appeal (*see, City of New York v Dezer Props.*, 95 NY2d 771, 773; *Vliet v Alweis*, 227 AD2d 853, 854 n).

their perceived sightings of the source of the muzzle flashes. Additionally, the Superintendent expressed his concern for the safety of petitioners' fellow officers and the public in general. Given the circumstances presented here, this is a valid, rational concern since it is foreseeable that bullets shot from a moving vehicle could travel beyond their intended target and strike unintended victims. A careful review of petitioners' own description of the incident makes it clear that at the time they shot at the back of the fleeing vehicle, they were not at that moment faced with the use or imminent use of deadly force by the occupants in that vehicle which had recommenced its flight in a westerly direction along the Belt Parkway. In view of the foregoing, the Superintendent had ample basis upon which to conclude that petitioners' actions created an unnecessary risk of injury to others and therefore violated State Police regulations.

We next reject petitioners' assertion that the Superintendent's issuance of letters of censure without a hearing violates their due process rights. "Both State and Federal Courts have recognized that constitutional protections afforded public employees, including due process rights, may be waived by unions acting on their behalf through entering into collective bargaining agreements with public employers * * *" (*Matter of De-Lain v Governor's Off. of Empl. Relations*, 266 AD2d 627, 629, *lv denied* 94 NY2d 759 [citations omitted]; *see, Matter of Dickinson [State of New York]*, 188 AD2d 919, 920, *lv denied* 81 NY2d 708; *Antinore v State of New York*, 49 AD2d 6, 10, *affd* 40 NY2d 921). Here, the applicable collective bargaining agreement between the union representing petitioners and the State provides that management may "discipline or discharge members in accordance with the Rules and Regulations of the Division" (*see*, Executive Law § 215 [3] [grants the Superintendent the power to make rules and regulations for the discipline and control of the State Police and provides that permanent State Police appointees may be *removed* by Superintendent *only* after a hearing]; *see also, Matter of Ward v Chesworth*, 125 AD2d 912, 913-914, *lv denied* 69 NY2d 610). As State Police regulations do not provide for a hearing upon a censure by the Superintendent (*see*, 9 NYCRR 479.3 [b] [1]), petitioners waived any claimed due process rights to a hearing in their collective bargaining agreement.

We have considered petitioners' remaining contentions and find they are without merit.

CARDONA, P.J., CREW III, CARPINELLO and ROSE, JJ., concur. Ordered that the judgment is affirmed, without costs.